IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA I. PAYNE, | : | Civil No. 3:17-cv-1230 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| MARGARET GORDON, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

I.   **Background and Procedural History**

Plaintiff Joshua Payne ("Payne"), an inmate confined at the Mahanoy State

Correctional Institution in Frackville, Pennsylvania ("SCI-Mahanoy"), initiated the instant

action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as a Defendant is Courtney

Rodgers, D.O. (*Id.*). Also named as Defendants are several officials and employees of the

Pennsylvania Department of Corrections ("DOC").[1] (*Id.*).

In the complaint, Payne alleges that Defendants refused to provide him with his

previously approved therapeutic diet, and informed him that he must first submit to a blood

test to determine whether he actually has food allergies. (*Id.*). Payne contends that a blood

test was not required by the DOC policy in effect at the time, and that other inmates were

---

[1]   The instant Memorandum only addresses Defendant Rodgers' dispositive motion. The Court
addresses the Commonwealth Defendants' dispositive motion in a separate Memorandum issued this
date.

not required to undergo blood testing to verify their food allergies prior to being placed on a nonstandard therapeutic diet. (*Id.*). Payne alleges that the denial of his diet was retaliatory in nature, based on a previous lawsuit filed against prison staff, and that the alleged denial of his diet constitutes deliberate indifference to serious medical needs, a violation of his equal protection rights, and conspiracy. (*Id.* at ¶¶ 43-51).

On July 24, 2017, the Court granted Payne's application to proceed *in forma pauperis*, and directed service of the complaint. (Doc. 5). On August 31, 2017, Defendant Rodgers filed a motion to revoke Payne's *in forma pauperis* status, arguing that Payne is subject to the three strikes provision set forth in 28 U.S.C. § 1915(g).[2] (Doc. 12). In response, Payne argued that he is not subject to § 1915(g)'s three strikes provision because he has not filed three or more lawsuits that have been dismissed as frivolous, malicious, and/ or for failure to state a claim upon which relief may be granted. (Doc. 14).

Thereafter, on September 20, 2017, Defendant Rodgers filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) addressing the merits of Payne's claims. (Doc. 16). On May 30, 2018, the Court provided notice to the parties of its intent to convert the motion into a motion for summary judgment. (Doc. 38). Accordingly, the motion is

---

[2]    Pursuant to 28 U.S.C. § 1915(g), a prisoner, who on three or more prior occasions while incarcerated has filed an action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, must be denied *in forma pauperis* status unless he was in imminent danger of serious physical injury at the time that the complaint was filed. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 310-11 (3d Cir. 2001) (en banc).

2

treated as one for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Payne failed to respond to Defendant Rodgers' motion and the time for responding has now

passed.[3] Consequently, the motion is deemed unopposed and ripe for resolution. For the

reasons set forth below, Defendant Rodgers' motion will be granted. (Doc. 16).

Additionally, Defendant Rodgers' motion to revoke Payne's *in forma pauperis* status

pursuant to 28 U.S.C. § 1915(g) will be dismissed as moot. (Doc. 12).

## II.   Summary Judgment Standard of Review

When a party moves to dismiss, but where "matters outside the pleadings are

presented to and not excluded by the court, the motion must be treated as one for

summary judgment under Rule 56." FED. R. CIV. P. 12(d). Typically, when a court converts

a motion to dismiss into a motion for summary judgment under Rule 56, notice must be

given to all parties of the court's intent to do so. *Id.*; *Garcia v. Newtown Twp.*, 2010 WL

785808, at *3 (E.D. Pa. 2010). As stated, the Court previously provided notice to the parties

of its intent to convert the motion into a motion for summary judgment. (Doc. 38).

Therefore, the motion will be treated as one for summary judgment pursuant to Federal

Rule of Civil Procedure 56.

Through summary adjudication, the court may dispose of those claims that do not

---

[3]    Payne was cautioned that failure to file a brief in opposition to Defendant's motion would result in the motion being deemed unopposed. (Doc. 25 ¶ 2; Doc. 38 ¶ 3; Doc. 46, ¶ 2) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's,

4

then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. Allegations of the Complaint

Payne alleges that in 2012 he was approved to receive a nonstandard therapeutic diet. (Doc. 1 ¶ 14). At the end of April 2016, Payne allegedly went to sick call to renew his nonstandard therapeutic diet and was approved for the diet. (*Id.* at ¶ 16). However, he claims that he did not receive this diet. (*Id.* at ¶ 19). On May 2, 2016, Payne presented to the medical department for chronic care review and was informed that his nonstandard therapeutic diet was on hold pending litigation. (*Id.* at ¶¶ 19-20, 42). Also at this visit,

5

Payne alleges that he was told that he must first submit to a blood test to determine whether he actually has food allergies. (*Id.* at ¶ 21). Payne acknowledges that he refused to submit to blood testing and, therefore, was not placed on the therapeutic diet. (*Id.* at ¶¶ 48-49).

Payne alleges that other inmates were not required to undergo blood testing to verify their food allergies prior to being placed on a nonstandard therapeutic diet. (*Id.* at ¶¶ 48-49). He further alleges that a blood test was not required by the DOC policy in effect at the time. (*Id.*). Payne asserts that the DOC did not amend the relevant policy until December 28, 2016, at which time the policy was amended to require inmates to submit to allergy testing in order to verify all self-reported allergies. (*Id.* at ¶ 39). Payne contends that Defendants had no authority to require Payne to enforce a new, unwritten policy without "proof of a policy or procedures manual." (*Id.* at ¶ 40). Thus, he alleges that Defendants violated his equal protection rights by requiring him to submit to a blood test before the relevant DOC policy was in effect, and because other inmates were not required to undergo the blood test. (*Id.*).

Payne alleges that the denial of his diet was retaliatory in nature, based on a previous lawsuit he filed against co-Defendants Gordon, Ulrich, and Klemm. (*Id.* at ¶¶ 15-17).

Payne further alleges that co-Defendant Gordon was deliberately indifferent to his serious medical needs by denying his therapeutic diet. (*Id.* at ¶¶ 45-47).

6

Lastly, Payne alleges that Defendants conspired with prison officials to refuse his therapeutic diet. (*Id.* at ¶¶ 50-51).

For relief, Payne requests declaratory and compensatory relief. (*Id.* at p. 14).

## IV.  Statement of Undisputed Facts[4]

In 2012, Payne was approved to receive a non-standard therapeutic diet that consisted of lactose restrictions and no onions or tomatoes. (Doc. 41, Statement of Material Facts, ¶ 1; Doc. 1, p. 6). Also in 2012, Payne filed a lawsuit pursuant to 42 U.S.C. § 1983 against several employees of the Department of Corrections, in which he alleged that Defendants prevented him from practicing his religion by refusing to provide him Ramadan compliant meals that also complied with his non-standard therapeutic diet. (Doc. 41 ¶ 2; Doc. 1, p. 7). Defendant Rodgers was not a party to that prior action. (Doc. 41 ¶ 3).

Payne contends that, subsequent to settling the 2012 action, Defendants retaliated against him for filing the 2012 lawsuit by putting a hold on his non-standard therapeutic diet pending his submission to a radioallergosorbent test ("RAST"). (Doc. 41 ¶ 4; Doc. 1, pp.

---

[4]  Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. *See id.* Unless otherwise noted, the factual background herein derives from Defendant Rodgers' Rule 56.1 statement of material facts. (Doc. 41). Despite being ordered to file a responsive statement of material facts (Doc. 38 ¶¶ 3-4; Doc. 46 ¶ 3), Payne failed to file a response to Defendant Rodgers' statement of material facts. The Court accordingly deems the facts set forth by Defendant Rodgers to be undisputed. *See* M.D. PA. LOCAL RULE OF COURT 56.1.

7

7-8). Payne states that he was not previously required to undergo RAST allergy testing. (*Id.*). Payne refused to undergo RAST allergy testing. (Doc. 41 ¶ 7; Doc. 1, p. 13).

Payne contends that Defendant Gordon placed his diet on hold, and he became aware of this hold on May 2, 2016. (Doc. 41 ¶ 5; Doc. 1, pp. 8, 12). Payne then submitted letters and Inmate Requests to the Defendants inquiring why he was required to undergo allergy testing. (Doc. 41 ¶ 6; Doc. 1, p. 8). One Inmate Request was directed to Defendant Rodgers. (*Id.*). Defendant Rodgers did not respond to Payne's Inmate Request. (Doc. 41 ¶ 9; Doc. 1, p. 9; Doc. 1-1, p. 1- 2). Brenda Houser, RN, issued a response to Payne's Inmate Request confirming that his non-standard diet was not approved by the dietician at the Central Office. (*Id.*).

The only claims against Defendant Rodgers pertain to Payne sending him one Inmate Request regarding the refusal to renew his non-standard diet. (Doc. 41 ¶ 10; Doc. 1). The complaint does not set forth any allegations that Defendant Rodgers was personally involved in the decision not to renew Payne's non-standard diet pending RAST allergy testing. (*Id.*).

On December 28, 2016, a Department of Corrections policy was implemented which required all inmates to undergo RAST allergy testing to verify allergies in order to be approved for a non-standard diet. (Doc. 41 ¶ 8; Doc. 1, p. 11).

On June 1, 2016, Payne submitted grievance number 630459, wherein he complains

8

that on May 2, 2016, he was informed that his non-standard diet renewal was placed on hold by Defendant Gordon pending his submission to RAST allergy testing. (Doc. 41 ¶ 12; Doc. 17-1, pp. 32-41). The grievance does not state that Defendant Rodgers was involved in the decision to refuse the therapeutic diet, that Defendant Rodgers was involved in the decision to demand Payne to undergo allergy testing, that Defendant Rodgers retaliated against Payne, or that Defendant Rodgers was otherwise involved in the actions that gave rise to the grievance. (Id.). The grievance was ultimately dismissed at the final appeal stage as untimely because it was not submitted within fifteen (15) working days after the events upon which the claims are based. (Id.).

The remainder of Payne's grievances, as outlined below, are not relevant to the instant action and claims against Defendant Rodgers. (Doc. 41 ¶ 13).

On May 10, 2017, Payne filed grievance number 677742 complaining that DOC employees violated his First Amendment rights and denied him access to the court system by confiscating his legal documents from another inmate who was in possession of the same. (Doc. 41 ¶ 14). Payne does not allege that Defendant Rodgers was involved in the actions that give rise to the grievance. (Id.). The grievance was dismissed as untimely. (Doc. 41 ¶ 14; Doc.17-1, pp. 1-10).

On August 5, 2016, Payne filed grievance number 639676, complaining that the mailroom incorrectly determined that he had insufficient funds despite his indigent status,

9

causing him to miss court filing deadlines. (Doc. 41 ¶ 15). This grievance was ultimately exhausted, but does not pertain to Defendant Rodgers. (Doc. 41 ¶ 15; Doc. 17-1, pp. 42-67).

On June 1, 2016, Payne submitted grievance number 629211, directed to a mailroom supervisor and inspector, in which he grieves that they improperly determined that he had insufficient funds to send legal mail, thereby violating his right of access to the courts. (Doc. 41 ¶ 16; Doc. 17-1, pp. 11-24). The grievance was denied at the initial review stage and first appeal stage, and finally dismissed without consideration due to a procedural defect at the final appeal stage. (Id.).

In grievance number 580039, submitted on July 30, 2015, Payne contends that his constitutional rights were violated when he was placed in the Restricted Housing Unit ("RHU") for approximately five weeks, where the cell lights were turned on all day and night. (Doc. 41 ¶ 17; Doc. 17-1, pp. 116-126). This grievance was ultimately exhausted. (Id.).

On July 8, 2015, Payne submitted grievance number 576712, in which he claims that his property went missing when he was placed in the RHU. (Doc. 41 ¶ 18; Doc. 17-1, pp. 106-113). This grievance does not implicate Defendant Rodgers. (Id.). It was upheld in part, to the extent it was agreed that Payne did not pack his own property, but otherwise denied. (Doc. 41 ¶ 18; Doc. 17-1, pp. 106-107, 110-115).

In grievance number 572299, submitted on June 15, 2015, Payne claims that he was

not being provided with proper mental health treatment. (Doc. 41 ¶ 19). Payne does not allege that Defendant Rodgers was involved in the actions that give rise to the grievance. (*Id.*). This grievance was ultimately exhausted. (Doc. 41 ¶ 19; Doc. 17-1, pp. 95-105).

In grievance number 571024, submitted on June 7, 2015 and directed to the mailroom staff, Payne complains that he was improperly charged for postage and, as a result, his legal mail was not received by the Court. (Doc. 41 ¶ 20; Doc. 17-1, pp. 83-94).

On December 26, 2014, Payne filed grievance number 545444, wherein he complains that he was charged a co-pay for a medication refill secondary to a condition which Payne believed was chronic, but the DOC believed was not chronic. (Doc. 41 ¶ 21). Payne does not allege that Defendant Rodgers was involved in these actions. (*Id.*). This was grievance was exhausted. (Doc. 41 ¶ 21; Doc. 17-1, pp. 70-82).

On May 9, 2014, Payne filed grievance number 509263, wherein he claims that his property was missing after he was transferred to another prison. (Doc. 41 ¶ 22; Doc. 17-1, pp. 127-158). He also complains about the grievance procedure itself. (*Id.*).

In grievance number 511427, Payne again complains that his property was missing after he was transferred to another prison. (Doc. 41 ¶ 23). This grievance was ultimately exhausted. (Doc. 41 ¶ 23; Doc. 17-1, pp. 127-196).

On June 27, 2013, Payne filed grievance number 477853, claiming that the DOC improperly confiscated photographs that were sent to him in the mail. (Doc. 41 ¶ 24). This

grievance was dismissed as untimely. (Doc. 41 ¶ 24; Doc. 17-1, pp. 220-233).

On March 20, 2013, Payne filed grievance number 453709, wherein he complains that DOC staff confiscated and discarded his religious books and legal materials. (Doc. 41 ¶ 25). This grievance was exhausted. (Doc. 41 ¶ 25; Doc. 17-1, pp. 213-219).

On March 11, 2014, Payne filed grievance number 451474, complaining that the razor safety precautions were interfering with his religious beliefs. (Doc. 41 ¶ 26). This grievance was exhausted. (Doc. 41 ¶ 26; Doc. 17-1, pp. 204-212).

On January 12, 2013, Payne submitted grievance number 444056, wherein he grieves that he did not have access to Islamic reading materials and the prison Imam. (Doc. 41 ¶ 27). This grievance was exhausted. (Doc. 41 ¶ 27; Doc. 17-1, pp. 197-203).

In grievance number 427372, submitted on August 11, 2012, Payne contends that he was denied a therapeutic diet that was compliant with Ramadan, in violation of his religious freedom. (Doc. 41 ¶ 28). This incident occurred in 2012 at SCI-Camp Hill and did not involve Defendant Rodgers. (*Id.*). This grievance was rejected due to a procedural defect. (Doc. 41 ¶ 28; Doc. 17-1, pp. 268-274).

Payne submitted grievance number 422976 on August 6, 2012, in which he again contends that he was denied a therapeutic diet that was compliant with Ramadan, in violation of his religious freedom. (Doc. 41 ¶ 29). This occurred at SCI-Camp Hill and does not implicate Defendant Rodgers. (*Id.*). This grievance was exhausted. (Doc. 41 ¶ 29;

Doc. 17-1, pp. 262-267).

Payne submitted grievance number 397922 on January 19, 2012, in which he claims that his legal work and photographs were improperly confiscated from his cell. (Doc. 41 ¶ 30; Doc. 17-1, pp. 248-254). This grievance was exhausted. (*Id.*).

On January 19, 2012, Payne filed grievance number 397925, complaining that he was denied a fair misconduct hearing. (Doc. 41 ¶ 31). This grievance was dismissed on a procedural defect. (Doc. 41 ¶ 31; Doc. 17-1, pp. 255-261).

On December 23, 2011, Payne filed grievance number 394605, wherein he contends that a correctional officer spoke to him in a threatening and hostile manner. (Doc. 41 ¶ 32). This grievance was exhausted. (Doc. 41 ¶ 32; Doc. 17-1, pp. 241-247).

In grievance number 389405, submitted November 13, 2011, Payne claims that his property was missing when he was placed in the Special Management Unit ("SMU"). (Doc. 41 ¶ 33). This grievance was dismissed as untimely. (Doc. 41 ¶ 33; Doc. 17-1, pp. 234-240).

All of the grievances filed prior to May 2014 were based on incidents that occurred while Payne was housed at SCI-Camp Hill. (Doc. 41 ¶ 34). Defendant Rodgers is a physician at SCI-Mahanoy, and the incidents that are the subject of the instant action occurred at SCI-Mahanoy. (Doc. 41 ¶ 34; Doc. 1).

V.     **Discussion**

Defendant Rodgers seeks an entry of judgment in his favor on the following grounds: (1) Payne failed to exhaust his administrative remedies with respect to the claims against Defendant Rogers or with respect to the claims the complaint, (2) Payne failed to establish that Defendant Rodgers was personally involved in the alleged deliberate indifference to his serious medical needs, (3) Payne failed to establish a violation of his First Amendment rights, (4) Payne failed to establish an equal protection claim, and (5) Payne failed to establish a conspiracy claim. (Doc. 17). The Court will address these arguments seriatim.

## A.    Exhaustion of Administrative Review

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001). The exhaustion requirement is mandatory, *see Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Courts have also imposed a procedural default component on the exhaustion

requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. *See Spruill*, 372 F.3d 218. An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Thus, the PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Id.* at 92.

The Pennsylvania Department of Corrections has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. *See* 37 Pa. Code § 93.9(a); *see also* www.cor.state.pa.us, DOC Policies, Policy No. DC-ADM 804, Inmate Grievance System. DC-ADM 804 provides inmates with a three-tiered process for filing grievances and appeals to grievance responses. *Id.* After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. *Id.* This must occur within fifteen days after the events upon which the claims are based. *Id.* "The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim. The statement of facts shall include the date,

15

approximate time and location of the event(s) that gave rise to the grievance. The inmate shall identify individuals directly involved in the event(s)." DC-ADM 804, § 1(A)(12). If the inmate was dissatisfied with the initial response to his grievance, the inmate may then file an appeal to the Facility Manager in writing, within fifteen (15) working days from the date of the initial review response. *Id.* An inmate who remained dissatisfied with the decision of the Facility Manager may then appeal to final review with the Chief of the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen (15) working days from the date of the Facility Manager's decision. *Id.* An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth v. Churner*, 206 F.3d 289, 293 n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

Courts have invariably held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable. *See Todd v. Benning*, 173 F. App'x 980, 982-83 (3d Cir. 2006) (expressing approval of Eighth Circuit's holding in *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001)) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Examples of affirmative

misconduct on the part of prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, see *Harcum v. Shaffer*, No. 06-5326, 2007 WL 4167161, at *5 (E.D. Pa. Nov.21, 2007) (finding administrative remedies unavailable where prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate grievance forms in response to inmate inquiries, see *Mitchell v. Horn*, 318 F3d 523, 529 (3d Cir. 2003), (3) advising an inmate that his or her situation does not require a grievance, see *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were unavailable to plaintiff who had been advised by prison official that he must wait until the end of the prison's investigation before filing a grievance), and (4) failing to file or respond to a prisoner's grievances, see *Camp v. Brennan*, 219 F.3d 279, 280-81 (3d Cir. 2000) (finding that administrative remedies were unavailable where prison officials refused to file plaintiff's grievances regarding their coworkers). The Third Circuit has found that an institution "rendered its administrative remedies unavailable to [an inmate] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

On June 1, 2016, Payne filed grievance number 630459, wherein he alleges that registered dietician Margaret Gordon advised him that his "diet was not approved by the

Dietician at Central Office" and that the therapeutic diet was "placed on hold pending allergy testing." (Doc. 17-1, pp. 33-34). In the grievance, Payne expressly states that "this grievance is against Ulli Klem . . ., Margaret Gordon[,] and the CHCA [Corrections Health Care Administrator] of SCI-Mahanoy." (Doc. 17-1, p. 34). Defendant Rodgers contends that the grievance does not suggest that he was involved in the decision to refuse the therapeutic diet, that he was involved in the decision to require Payne to undergo allergy testing, that he retaliated against Payne, or that he was otherwise involved in the actions that gave rise to the grievance. (Doc. 17-1, pp. 32-45).

On June 13, 2016, the Facility Grievance Coordinator rejected grievance number 630459 because the issues presented in the grievance were already being reviewed and addressed. (Doc. 1-1, p. 11). Payne filed an appeal to the Facility Manager. (Doc. 1-1, p. 15). On July 6, 2016, the Facility Manager upheld the response of the Facility Grievance Coordinator. (Doc. 1-1, p. 16). On July 18, 2016, Payne attempted to file an appeal to final review by submitting his appeal paperwork to the mailroom for mailing. (Doc. 1-1, p. 17). However, the mailroom rejected Payne's mail and returned it to him. (Doc. 1-1, p. 22). Payne contends that the appeal paperwork was not returned to him until July 29, 2016, causing him to miss the deadline for filing an appeal with the SOIGA. Thus, on July 29, 2016, Payne filed a request for an extension of time to file an appeal with the SOIGA. (*Id.*). However, on August 29, 2016, the Chief Grievance Officer of the SOIGA dismissed the

grievance at the final appeal level because it was not submitted within fifteen (15) working days after the events upon which claims are based. (Doc. 1-1, pp. 11-19, *see also* Doc. 17-1, pp. 32-45).

Although Defendant Rodgers was not referenced by name in grievance number 630459, the contents of the grievance clearly relate to the allegations of the complaint. Based upon the evidence of record, the Court finds that Payne may have been prevented or hindered from properly pursing administrative remedies with respect to this grievance. The evidence reflects that the institution's failure to promptly return Payne's mail to him may have obstructed his efforts to pursue administrative remedies, thus rendering the grievance process essentially unavailable to Payne.

Defendant Rodgers also argues that grievance number 630459 was untimely the day it was filed because it was filed more than fifteen (15) days after the events upon which the claims are based. (Doc. 17, p. 6). However, the grievance references dates of May 6, 12, 16, 18, and 19, 2016. (Doc. 17-1, pp. 33-34). Thus, the Court finds that it was timely filed, within fifteen (15) days of the date upon which the claims are based, on June 1, 2016.

Based on the foregoing, the Court will deny Defendant Rodgers' motion for summary judgment based on failure to exhaust the claims against him and the claims that relate to the allegations in the complaint.

## B. Deliberate Indifference Claim

Defendant Rodgers argues that Payne fails to state a claim against him because he lacks personal involvement in the alleged deliberate indifference claim. (Doc. 19, pp. 9-12).

Individual liability can be imposed in a civil rights action only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

In the complaint, Payne plainly indicates that he is setting forth a deliberate indifference claim against dietician Margaret Gordon, and not against Defendant Rodgers. (Doc. 1 ¶¶ 45-47; Doc. 1, p. 14).

The only potential reference to a deliberate indifference claim against Defendant

Rodgers is that Payne sent one Inmate Request to him inquiring as to why he was required

to undergo allergy testing. (Doc. 1 ¶ 25). Payne has failed to submit any evidence that he

ever spoke with Defendant Rodgers about this issue or that Defendant Rodgers responded

to the Inmate Request. It is well-settled that a state prisoner's allegation that prison officials

and administrators responded inappropriately, or failed to respond to a prisoner's complaint

or an official grievance, does not establish that the officials and administrators were involved

in the underlying allegedly unconstitutional conduct. *See Rode*, 845 F.2d at 1207-08

(concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual

knowledge necessary to establish personal involvement); *Brooks v. Beard*, 167 F. App'x

923, 925 (3d Cir. 2006); *see also Croom v. Wagner*, 2006 WL 2619794, at *4 (E.D. Pa.

Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is

sufficient to impose knowledge of any wrongdoing); *Ramos v. Pennsylvania Dept. of

Corrections*, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and

denial of the grievances and subsequent administrative appeal does not establish personal

involvement). A party opposing summary judgment must come forth with "affirmative

evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v.

City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). This

evidence must be adequate, as a matter of law, to sustain a judgment in favor of the

non-moving party on the claims. *See Anderson*, 477 U.S. at 250-57; *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986); *see also* FED. R. CIV. P. 56(c), (e). Payne failed to respond to Defendants Rodgers' motion and thus failed to meet his burden with respect to a deliberate indifference claim against Defendant Rodgers. Consequently, Defendant Rodgers is entitled to an entry of judgment in his favor based on lack of personal involvement in the deliberate indifference claim.

### C.  First Amendment Claim

The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) (quoting *Allah*, 229 F.3d at 225).

Payne's allegation that he was retaliated against because he pursued litigation against DOC personnel implicates conduct protected by the First Amendment sufficient to

satisfy the first prong of the *Rauser* test. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). However, Payne acknowledges, and the record reflects, that Defendant Rodgers was not a party to the prior action. (*See* Doc. 1 ¶ 16; Doc. 1-1, pp. 29-33; *see also Payne v. Doe, et al.*, Civil No. 3:12-cv-2243).

Once it is determined that the inmate was engaged in protected conduct, he must demonstrate that he has suffered some adverse action at the hands of prison officials. *See Rauser*, 241 F.3d at 333 (citing *Allah*, 229 F.3d at 225). To show an "adverse action," the plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002), quoting *Allah*, 229 F.3d at 225. Payne asserts that he suffered adverse action in the form of being denied his medically approved therapeutic diet.

In analyzing the third element, the Court must determine whether there is a genuine dispute of fact as to the existence of a causal connection between the exercise of the constitutional right and the adverse action. Although Payne claims that Defendant Rodgers was personally involved in the adverse action he suffered, he has failed to come forward with any evidence of retaliatory action by Rodgers or any evidence of a causal link between his prior lawsuit and any alleged retaliatory action on the part of Rodgers. Consequently, summary judgment will be granted in Defendant Rodgers' favor with respect to Payne's retaliation claim against him.

## D.    Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental. *Tillman v. Lebanon County Corr. Fac.*, 221 F.3d 410, 423-24 (3d Cir. 2000).

An equal protection claim can also be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Williams v. Morton*, 343 F.3d 212, 221 (2003); *see also Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest. *See Tillman*, 221 F.3d at 423.

Payne does not state that he is a member of a protected class. Indeed, prisoners are not a protected class of individuals. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317

24

(3d Cir. 2001) (stating that prisoners are not a suspect class). Therefore, Payne's claim survives only if he has properly stated a violation of his equal protection rights under a class-of-one theory. To survive under the class-of-one theory, Payne must allege facts showing that he has been treated differently from similarly situated inmates, that the defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate penological interest. *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal. *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho*, 423 F.3d at 354-55); *see also Twombly*, 550 U.S. at 561 (requiring more than a "wholly conclusory statement of claim" to survive a motion to dismiss). Instead, plaintiffs must identify similarly situated individuals and allege "occasions or circumstances" of differential treatment. *Young*, 160 F. App'x at 266; *see also Twombly*, 550 U.S. at 563 (requiring a plaintiff to plead a set of facts consistent with legal allegations in complaint to survive dismissal).

In the complaint, Payne alleges that his equal protection rights were violated when he was required to submit to a blood test to receive his medical diet, when other inmates were not required to undergo blood testing to verify their food allergies prior to being placed

on a non-standard therapeutic diet. Payne states as follows:

> The refusal of Defendants Gordon, Klemm, Delbalso, Mason, Wetzel,
> Rodgers and Steinhart to provide Plaintiff with his therapeutic diet because
> they wanted the Plaintiff to submit to a blood test, and when Plaintiff refused
> to submit to this test due to the policy not stating that an inmate having to do
> a blood test to determine the need for said diet, plus no other DOC inmates
> having to submit to a blood test like the Plaintiff is being told to do, constituted
> a[n] Equal Protection Claim under the Fourteenth Amendment because these
> Defendants intentionally treated the Plaintiff different from others similarly
> situated persons and there was no rational basis for the difference in this
> treatment.

(Doc. 1 ¶ 48).

Payne has not adduced any competent summary judgment evidence that Defendant

Rodgers was involved in the alleged denial of his therapeutic diet or the decision to require

Payne to undergo allergy testing. The record reflects that Payne's diet was placed on hold

pursuant to the directive of the Chief Registered Dietician. (Doc. 17-1, p. 33). The

undisputed record does not contain any evidence that Defendant Rodgers was personally

involved in the decision not to renew Payne's therapeutic diet pending RAST allergy testing.

Instead, the record reflects that Payne sent one Inmate Request to Defendant Rodgers

inquiring as to why his therapeutic diet was not renewed. (Doc. 41 ¶ 10). Payne failed to

respond to Defendants Rodgers' motion and thus failed to meet his burden to show a

genuine dispute of fact for trial with respect to the equal protection claim against Defendant

Rodgers. Consequently, Defendant Rodgers' motion will be granted on this ground.

### E. Conspiracy Claim

In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.* A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991). Also, to survive a motion for summary judgment, a plaintiff must establish that there is a genuine issue of material fact regarding the question of whether the defendants entered into an illegal conspiracy which caused the plaintiff to suffer a cognizable injury. *Massachusetts School of Law at Andover v. American Bar Association*, 107 F.3d 1026, 1039 (3d Cir.), *cert. denied*, 522 U.S. 907 (1997). In other words, to successfully counter a motion for summary judgment, a plaintiff must provide specific evidence establishing that

defendants agreed among themselves to act against him either unlawfully or for an unlawful purpose. *Vieux v. East Bay Regional Park Dist.*, 906 F.2d 1330, 1343 (9th Cir.), *cert. denied*, 498 U.S. 967 (1990).

Here, Payne has failed to introduce into the record any evidence which shows an agreement or plan formulated and executed by Defendant Rodgers which rises to the level of a conspiracy. In a conclusory fashion, Payne alleges that Defendants' "conspiratorial actions denying the Plaintiff's medically approved therapeutic diet [was] due to him filing a 42 U.S.C. § 1983 claim." (Doc. 1 ¶ 51). Payne has concluded that various Defendants conspired to deny his medical diet, yet he has failed to allege any facts or produce any evidence showing a genuine dispute of fact as to the existence of an agreement or plan formulated and executed by Defendant Rodgers to achieve this conspiracy. (*See* Doc. 1). With respect to Defendant Rodgers, Payne failed to submit any documents or other evidence to reasonably suggest the presence of an agreement or concerted activity between Defendant Rodgers and any co-Defendants. Furthermore, the evidence establishes that Defendant Rodgers was not involved in the prior civil rights action which Payne asserts is the basis for the alleged conspiracy. Payne cannot rely on unsupported claims of conspiracy. Without a factual showing which gives some substance to this conspiracy claim, Payne's conspiracy claim against Defendant Rodgers amounts to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of

wrongdoing by a defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. *See Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (holding that conspiracy claims which are based upon a *pro se* plaintiff's subjective suspicions and unsupported speculation are properly dismissed under § 1915(d)).

The Court finds that Payne failed to produce evidence against Defendant Rodgers which would show a genuine dispute of fact as to the existence of an agreement designed to deny his constitutional rights. Consequently, Defendant Rodgers' motion will be granted on this ground.

## VI. Conclusion

Based on the foregoing, Defendant Rodgers' motion will be granted. (Doc. 16). The motion to revoke Payne's *in forma pauperis* status pursuant to 28 U.S.C. § 1915(g) will be dismissed as moot. (Doc. 12).

A separate Order shall issue.

Dated: August ___, 2018

Robert D. Mariani
United States District Judge