# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA I. PAYNE, | : Civil No. 3:17-cv-1230 |
| Plaintiff | : (Judge Mariani) |
| v. | : |
| MARGARET GORDON, et al., | : |
| Defendants | : |

## **MEMORANDUM**

### I.  **Background**

Plaintiff Joshua Payne ("Payne"), an inmate confined at the Mahanoy State Correctional Institution in Frackville, Pennsylvania ("SCI-Mahanoy"), initiated this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The remaining Defendants are the following officials and employees of the Pennsylvania Department of Corrections ("DOC"): Margaret Gordon, Ulrich Klemm, John Wetzel, Theresa A. Delbalso, Bernadette Mason, and John Steinhart. (Id.).

In the complaint, Payne alleges that Defendants refused to provide him with his previously approved therapeutic diet, and informed him that he must first submit to a blood test to determine whether he actually has food allergies. (Id.). Payne contends that a blood test was not required by the DOC policy in effect at the time, and that other inmates were not required to undergo blood testing to verify their food allergies prior to being placed on a nonstandard therapeutic diet. (Id.). Payne sets forth the following theories of liability: (1)

Defendants refused to provide Payne his therapeutic diet in retaliation for filing a prior lawsuit against them, (2) Defendants were deliberately indifferent to his medical need for a therapeutic diet, (3) Defendants violated his equal protection rights by requiring him to submit to a blood test in order to receive his therapeutic diet, when other inmates were not required to submit to a blood test and there was no official policy in effect requiring inmates to undergo a blood test, and (4) Defendants conspired with prison officials to refuse Payne his therapeutic diet. (*Id.* at ¶¶ 43-51).

Presently before the Court is Payne's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 62). For the reasons set forth below, the Court will deny the motion.

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a

genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. Allegations of the Complaint

Payne alleges that in 2012 he was approved to receive a nonstandard therapeutic diet. (Doc. 1 ¶ 14). At the end of April 2016, Payne allegedly went to sick call to renew his nonstandard therapeutic diet and was approved for the diet. (*Id.* at ¶ 16). However, he claims that he did not receive this diet. (*Id.* at ¶ 19). On May 2, 2016, Payne presented to the medical department for chronic care review and was informed that his nonstandard therapeutic diet was on hold pending litigation. (*Id.* at ¶¶ 19-20, 42). Also at this visit, Payne alleges that he was told that he must first submit to a blood test to determine whether he actually has food allergies. (*Id.* at ¶ 21). Payne refused to submit to blood testing and, therefore, was not placed on the therapeutic diet. (*Id.* at ¶¶ 48-49).

Payne contends that other inmates were not required to undergo blood testing to verify their food allergies prior to being placed on a nonstandard therapeutic diet. (*Id.* at ¶¶ 48-49). He further alleges that a blood test was not required by the DOC policy in effect at the time. (*Id.*). Payne asserts that the DOC did not amend the relevant policy until December 28, 2016, at which time the policy was amended to require inmates to submit to allergy testing in order to verify all self-reported allergies. (*Id.* at ¶ 39). Thus, he alleges

that Defendants violated his equal protection rights by requiring him to submit to a blood test. (*Id.*).

Payne alleges that the denial of his diet was retaliatory in nature, based on a previous lawsuit he filed against Defendants Gordon and Klemm. (*Id.* at ¶¶ 15-17).

Payne further alleges that Defendant Gordon, a registered dietician, was deliberately indifferent to his serious medical needs by denying his therapeutic diet. (*Id.* at ¶¶ 45-47).

Lastly, Payne alleges that Defendants conspired with prison officials to refuse his therapeutic diet. (*Id.* at ¶¶ 50-51).

## IV. Statement of Undisputed Facts

On January 20, 2012, Payne was approved for a nonstandard diet. (Doc. 65 ¶ 1; Doc. 69 ¶ 1; Doc. 70 ¶ 2). At that time, Payne asserts that the relevant policy did not require inmates to submit to a blood test to receive a nonstandard diet. (Doc. 65 ¶ 2; Doc. 70 ¶ 3).

Defendants assert that a nonstandard diet was not permanent, and DC-ADM 610 §§ (B)(1) and (2) provide that such a diet is subject to review. (Doc. 69 ¶ 1). Pursuant to DC-ADM 610 § (B)(1), the diet list is to be reviewed every thirty days to determine if it should be "... continued, discontinued or changed." (*Id.*). Defendants contend that it was not necessary for the policy to specifically provide for blood tests. (Doc. 69 ¶ 2).

Payne avers that a blood test was not required to renew his diet, but Defendants nevertheless wanted him to submit to a blood test to renew his diet. (Doc. 65 ¶¶ 3, 6).

5

Payne further avers that the policy requiring inmates to submit to a blood test to renew a diet was not in effect until December 28, 2016. (*Id.* at ¶ 7). Defendants deny that Payne did not have to submit to a blood test to receive a nonstandard diet, and cite to DC-ADM 610. (Doc. 65 ¶ 3; Doc. 69 ¶ 3). Pursuant to the terms of DC-ADM 610, "[m]edical personnel shall consider factors such as current diet effectiveness, diet compliance, and overall health status when considering continuance of medical nutrition therapy and shall consult the Department's Registered Dietitian for recommendations when necessary." (Doc. 69 ¶¶ 3, 7). Defendants therefore contend that a policy expressly requiring inmates to submit to a blood test was not necessary. (*Id.* at ¶ 7).

On April 11, 2016, Payne went to sick call to renew his diet. (Doc. 65 ¶ 5; Doc. 70 ¶ 5). A physician assistant renewed his diet until October 11, 2016. (*Id.*). Payne did not have to submit to a blood test. (*Id.* at ¶ 6).

On May 2, 2016, Payne presented to the medical department for chronic care review and was informed that his nonstandard therapeutic diet was on hold pending litigation. (*Id.* at ¶ 7). The physician assistant informed Payne that he must first submit to a blood test to determine whether he actually has food allergies. (*Id.* at ¶ 8).

Defendants Gordon and Klemm were named as Defendants in a prior lawsuit filed by Payne, docketed at civil action number 3:12-cv-2243. (Doc. 65 ¶ 4; Doc. 69 ¶ 4; Doc. 70 ¶ 4). On May 12, 2016, the parties settled civil action number 3:12-cv-2243. (Doc. 70 ¶ 11). As part of the settlement agreement, Defendants agreed to reinstate Payne's diet, and the

parties agreed that when the DOC implemented a new policy requiring inmates to submit to a blood test to determine if they have any allergies, Payne would willingly submit to a blood test. (*Id.*).

## V. Discussion

### A. Retaliation Claim

The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) (quoting *Allah*, 229 F.3d at 225).

Payne's claim that he was retaliated against because he pursued litigation against DOC personnel implicates conduct protected by the First Amendment sufficient to satisfy the first prong of the *Rauser* test. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Once it is determined that the inmate was engaged in protected conduct, he must demonstrate that he has suffered some adverse action at the hands of prison officials. *See Rauser*, 241 F.3d at 333 (citing *Allah*, 229 F.3d at 225). To show an "adverse action," the plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002) (quoting *Allah*, 229 F.3d at 225). As to the second prong, Payne asserts that he suffered adverse action in the form of being required to submit to a blood test. Because undergoing a mandatory blood test could deter a reasonably firm prisoner from exercising his constitutional rights, the adverse action prong is satisfied.

The last *Rauser* prong requires a prisoner to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. The Court employs a burden-shifting regime to determine whether a causal link exists. The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. *See Rauser*, 241 F.3d at 333-34 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action even in the absence of the protected activity. *See id.* If defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. *See id.* at 334.

In November 2012, Payne filed civil action number 3:12-cv-2243. *Payne v. Doe, et al.*, Civil No. 3:12-cv-2243. Defendants Gordon and Klemm are the only present Defendants who were also named in that lawsuit. *See id.* at Docs. 18, 19. On May 12, 2016, civil action number 3:12-cv-2243 was settled. *See id.* at Doc. 80.

On May 2, 2016, approximately ten days before the prior action was settled, Payne was advised that he must submit to a blood test to renew his therapeutic diet. (Doc. 1 ¶¶ 16, 22). During the relevant time, there was no DOC policy in effect that required inmates to undergo a blood test. It was not until December 2016 that the DOC instituted a new policy that required all inmates seeking an allergy-based diet to undergo blood testing. Defendants maintain that a nonstandard diet is subject to review, and a policy expressly requiring inmates to submit to a blood test was not necessary. (Doc. 69 ¶¶ 1, 7). There is a genuine dispute of material fact with respect to the causal link between the protected activity and Defendants' alleged retaliatory conduct.

Because there is a clear dispute as to whether filing the prior lawsuit was a substantial or motivating factor in requiring Payne to take a blood test to continue his therapeutic diet, the Court will deny the motion for summary judgment with respect to the retaliation claim.

B. **Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is

essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). An equal protection claim can be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *see also Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest. *See Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000). Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. *See Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-66 (1977); *Washington v. Davis*, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the decision, even though it need not be the sole motivating factor. *See Vill. of Arlington Heights*, 429 U.S. at 265-66. Moreover, to prove a lack of rational basis, a plaintiff must negate every conceivable rational basis for his differential treatment. *See Bd. of Trustees v. Garrett*, 531 U.S. 356, 367 (2001); *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 160 (3d Cir. 2002).

Payne does not state that he is a member of a protected class and prisoners are not a protected class of individuals. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class). Therefore, Payne's claim survives only if he has properly stated a violation of his equal protection rights under a class-of-one theory.

To survive under the class-of-one theory, Payne must allege facts showing that he has been treated differently from similarly situated inmates, that the Defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate penological interest. *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal. *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho*, 423 F.3d at 354-55); *see also Twombly*, 550 U.S. at 561 (requiring more than a "wholly conclusory statement of claim" to survive a motion to dismiss). Instead, plaintiffs must identify similarly situated individuals and allege "occasions or circumstances" of differential treatment. *Young*, 160 F. App'x at 266; *see also Twombly*, 550 U.S. at 563 (requiring a plaintiff to plead a set of facts consistent with legal allegations in complaint to survive dismissal).

Payne asserts that his equal protection rights were violated when he was required to submit to a blood test to receive his nonstandard diet, when other inmates were not required to undergo blood testing to verify their food allergies prior to being placed on a nonstandard therapeutic diet. Payne has submitted affidavits from fellow inmates who declare that they receive therapeutic diets at SCI-Mahanoy and were never required to submit to any type of blood test in order to renew their therapeutic diets. (Doc. 64-2, pp. 13-16). The reasons Payne was required to submit to a blood test, and whether he was treated differently than similarly situated persons, are clearly in contest. Consequently, the Court will deny Payne's motion for summary judgment on the equal protection claim.

### C. Deliberate Indifference Claim

The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). For a prisoner to prevail on an Eighth Amendment claim, he must prove that prison officials acted with deliberate indifference and that he suffered a deprivation of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the former, subjective component, of a conditions of confinement claim, a plaintiff must allege that the state actor acted with "deliberate indifference," a state of mind equivalent to gross negligence or reckless disregard of a known risk of harm. *See Farmer*, 511 U.S. at 836 & n.4. To satisfy the latter, objective component, a plaintiff must allege conditions that, either alone or in combination, deprive him of "the minimal civilized measure

of life's necessities," such as essential food, clothing, shelter, sanitation, medical care, or personal safety. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981); *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *Hudson*, 503 U.S. at 9. Mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 & n.14 (1976).

Pursuant to the Eighth Amendment, prisoners are entitled to a nutritionally adequate diet. *Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008) (citing *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)). The Eighth Amendment requires that prison officials serve "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Id.*

The record reflects that Payne did not receive his therapeutic meal for several months and that his therapeutic diet was placed on hold pending litigation. Based on the record, the Court is unable to conclude that there is no genuine dispute of fact as to whether Defendants exhibited deliberate indifference by failing to renew Payne's therapeutic diet absent a blood test. Accordingly, the Court will deny summary judgment with respect to the Eighth Amendment claim.

D. **Conspiracy Claim**

Defendants invoke the defense of qualified immunity as to the conspiracy claim against them. (Doc. 68, pp. 13-15). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier*, 533 U.S. at 201, *overruled in part by Pearson*, 555 U.S. at 236

(permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first). The Court finds that any decision on qualified immunity would be premature, and therefore, the Court will deny Defendants' request for dismissal of the conspiracy claims on the grounds of a qualified immunity defense. The denial, however, will be without prejudice.

## VI. Conclusion

Plaintiff has set forth legitimate theories of recovery on each of the counts on which he sought summary judgment. However, summary judgment may not be granted where there exists genuine issues of material fact and the material facts in this case are in dispute. Therefore the Court will schedule this case for trial by separate Order.

Based on the foregoing, the Court will deny Payne's motion for summary judgment.

Dated: February __, 2020

Robert D. Mariani
United States District Judge